No. 19,693.

The Great Western Sugar Company, et al. v.
Edward Erbes.
(367 P. [2d] 329)

Decided December 18, 1961.

Messrs. SHELDON and NORDMARK, Mr. RICHARD C. McLEAN, for plaintiffs in error.

Mr. KARL R. AHLBORN, Mr. JOHN W. O'HAGAN, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

PLAINTIFFS in error were defendants in the trial court and defendant in error was the plaintiff. We will refer to them as they there appeared or by name.

The plaintiff Erbes was an employee of M. & A. Enterprises. Prior to June 4, 1957, the date on which Erbes was injured, M. & A. had contracted with the defendant Sugar Company to construct some sugar bins on the

latter's property. The contract by its terms required M. & A. to carry Workmen's Compensation insurance for its employees. M. & A. carried Erbes on its payroll as an employee and covered him in its Workmen's Compensation policy which was in full force and effect before the work began and when the accident to Erbes occurred.

In the course of the construction of the sugar bins, M. & A. rented a crane and operator (defendant Nickle) from the Sugar Company at a price of $10 per hour to pour concrete. Nickle was paid by the Sugar Company and he was not carried on the payroll as an employee of M. & A.

On the day of the accident, Nickle was operating the crane which, together with himself, had been rented to M. & A. He had rigged the crane for pouring concrete and was told by M. & A. where the concrete was to be poured. During the course of the work that day the dragline slipped from the bucket attached to the crane causing the bucket to swing in an arc away from the cab of the crane. Erbes was struck by the bucket and seriously injured.

Erbes filed a claim for Workmen's Compensation against M. & A. and its insurer. The insurer paid Erbes for medical and hospital expenses and compensation for temporary total disability and is continuing to pay him for permanent partial disability. M. & A.'s insurer, pursuant to the statute, assigned its right to proceed against a third party tort-feasor to Erbes.

Erbes then brought this common law action against the Sugar Company and Nickle. The defendant Sugar Company and Nickle denied any negligence on their part and the Sugar Company set up two further defenses: (1) that the Sugar Company, as the landowner, was the statutory employer of all persons employed by contractors working on its land and Erbes was therefore barred from any common law remedies against it, and (2) that Nickle at the time of the accident was the employee of M. & A. and therefore the Sugar Company

was not liable as the master on the doctrine of *respondeat superior*.

The trial court ruled as a matter of law that the Sugar Company was not the employer of Erbes and from this ruling the Sugar Company brings error. The questions of negligence of the defendant Nickle and as to whether Nickle was the employee of the Sugar Company or of M. & A. were submitted to the jury by the court.

The jury returned a verdict for the plaintiff. The defendant does not challenge the jury's findings with respect to negligence, but contends that there was no evidence that Nickle was the servant of the Sugar Company at the time of the accident and the jury verdict should therefore be set aside.

I.

█ *Does C.R.S. '53, 81-3-2 and 81-9-2 provide immunity to a landowner from suit for common law liability where the employee of a contractor working on its land is injured by the negligence of the landowner when the contractor is himself an employer as defined in the Workmen's Compensation Act and has in effect at the time of the accident Workmen's Compensation insurance covering the employee?* The answer is in the negative.

C.R.S. '53, 81-3-2 provides in material substance that any employer who complies with the provisions of the chapter, including the provisions relating to insurance, shall not be subject to any liability for the death or personal injury to any employee except as provided in the chapter. In effect it abolishes the common law remedy of employees against employers who comply with the provisions of the Workmen's Compensation Act and substitutes therefore the benefits provided by the Workmen's Compensation Act.

C.R.S. '53, 81-9-2 provides:

"Every person, company or corporation that owns any real property or improvements thereon and that contracts out any work done on and to said property to any contractor, subcontractor or persons, who shall hire

or use four or more employees or workmen, including himself if working thereon in the doing of such work, shall be deemed to be an employer under the terms of this chapter and every such contractor and subcontractor or persons, as well as their employees, shall each and all of them be deemed to be employees as defined in this chapter and such employer shall be liable as provided in this chapter to pay compensation for injury or death resulting therefrom to said contractor, and subcontractor and their employees and, before commencing said work, shall insure and keep insured his liability as provided herein. Such employer shall be entitled to recover the cost of such insurance from said contractor, subcontractor or persons, and may withhold and deduct the same from the contract price or any royalties or other money due, owing or to become due said contractor, subcontractor or persons. *If said contractor,* subcontractor or persons *doing or undertaking to do any work for an owner of property* as above provided *shall* himself *be an employer* as defined in this chapter *and, before commencing said work, shall insure and keep insured his liability for compensation as herein provided, then and in that case said owner of said property shall not be subject to the provisions of this section.*" (Emphasis supplied.)

It is the Sugar Company's position that under C.R.S. '53, 81-9-2 it was the statutory employer of M. & A.'s employees. It contends that having required the contractor to carry Workmen's Compensation insurance, it, as an employer, had complied with the provisions of C.R.S. '53, 81-9-2 and was thereafter immune from any common law liability. The fault in this reasoning is a failure to recognize that under the statute the Sugar Company never attained the status of employer.

█ The statute provides that where the contractor undertaking to do the work for the landowner is himself an employer and has in force compensation insurance as therein provided, the landowner is not subject

to the provisions of the chapter. The stipulated evidence in this case is that M. & A. had compensation insurance in full force and effect at the time of beginning the work and at all times thereafter material here. Under these circumstances, the landowner was not subject to the provisions of C.R.S. '53, 81-9-2, and never became the constructive employer of Erbes.

We have not before decided the exact problem posed here. But our decisions dealing with questions of the survival of common law remedies with respect to the Workmen's Compensation Act demonstrate clearly that where the Act does not expressly limit the employee with respect to his common law remedies we are not disposed to read such limitation into the Act. *Chartier v. Winslow Crane Service Company*, 142 Colo. 294, 317, 350 P. (2d) 1044. Nor are we alone in this view. There is strong authority for the proposition that in the absence of legislative provision limiting the so-called "statutory" employer's common law liability where the contractual employer is covered by insurance the courts will not interpret such limitation into the law. *Clark v. Monarch Engineering Co.*, 248 N.Y. 107, 161 N.E. 436; *Schulte v. American Box Board Co.*, 358 Mich. 21, 99 N.W. (2d) 367. See also 166 ALR 813.

In a recent decision, the United States Court of Appeals for the Tenth Circuit, construing Colorado law, held that the common law liability of the contingent "statutory" employer was not destroyed where the contractual employer had Workmen's Compensation insurance. *Thomas v. Farnsworth Chambers Co.* (1960) 286 Fed. (2d) 270. While that decision is not binding upon us, it has strong persuasive force.

The defendant contends that to hold as we do penalizes the landowner who hires contractors carrying compensation insurance since the response in damages under the common law may be much greater than under the Workmen's Compensation Act. We would point out that there are many defenses under the common law which

the landowner has which would not be available to him under the Workmen's Compensation Act. But apart from this, the wisdom of the policy is for the legislature, not for the courts. See *Miller v. J. A. Utley Construction Co.,* (E.D. Mich.) 154 F. Supp. 138 for a discussion of this problem.

## II.

*Did the trial court err in submitting to the jury the question of whether the defendant Nickle was an employee of the Sugar Company or of M. & A. at the time the accident occurred?* The answer is in the negative.

The Sugar Company contends that there was no evidence that Nickle was its employee at the time of the accident but that on the contrary as a matter of law Nickle was an employee of M. & A. It is argued that by its contract with the Sugar Company, M. & A. was an independent contractor and therefore the Sugar Company had no control over Nickle. However, the rental of the crane and its operator by the Sugar Company to M. & A. was separate and apart from the construction contract entered into by them. With respect to the crane rental, the Sugar Company was in the same position as any third party renting a crane and its operator to M. & A.

In *Chartier v. Winslow Crane Service Company,* supra, we set down the criteria by which to determine whether the loaned servant became the servant of the borrowing employer or remained the servant of his general employer. That case presents an exhaustive treatment of the subject and it would unduly lengthen this opinion to again restate the authorities or the rationale upon which it is grounded. Suffice it to say that the evidence in *Chartier* and that presented here show substantially similar conditions. There is evidence here to show a rental of a highly valuable machine, together with a skilled operator, for a short period of time. The operator was paid by the Sugar Company and could be replaced by the Sugar Company at any time. M. & A. had no

right to discharge the operator of the crane. The Sugar Company was responsible for the maintenance and repair of the crane.

M. & A.'s witness stated that it gave no direction to Nickle other than to tell him which bins were to be poured and was interested only in the results of Nickle's work. The Sugar Company contended that M. & A. gave supervisory direction to Nickle. This presented a disputed question of fact.

The Sugar Company contended that it was not in the business of renting cranes and that, as a matter of law, this is fatal to the plaintiff's claim that Nickle remained the servant of the Sugar Company. There is evidence in the record to show that the Sugar Company had rented the crane and its operator not only to M. & A. but to others doing work on the Sugar Company premises. It cannot contend that because it restricted the rental to contractors working on its own property, it was not in the business of renting its crane. But apart from this, the question of whether the general employer is in the business of renting machines and men does not in itself determine the issue of whether the loaned employee remains in the employ of the general employer. It is relevant evidence on the question of the intent on the part of the general employer to maintain control of his employee but is not determinative of the issue. *Restatement of the Law of Torts,* Sec. 227 (b) (c).

 Under the circumstances presented by the evidence here, the question as to whether the loaned servant became the employee of M. & A. or remained the servant of his general employer, the Sugar Company, was a mixed question of law and fact and was properly submitted to the jury. *Merlo v. Public Service Co.,* 381 Ill. 300, 45 N.E. (2d) 665.

Instructions relating to the applicable law were given to the jury and no objection is made to them nor is there any contention now that they did not sufficiently set forth the proper criteria for the jury to apply in

574

determining whether Nickle remained the servant of the Sugar Company or became the servant of M. & A. The jury by its verdict found the Sugar Company to be the employer of Nickle and since, as we have indicated, there is sufficient evidence in the record to support such finding, the determination is binding upon the court.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.